UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA NILEWONYAN FARYEN,                    Case No. 14-14664

           Plaintiff,                      Gerald E. Rosen
v.                                         United States District Judge

UNITED MACHINING INC.,                     Stephanie Dawkins Davis
                                           United States Magistrate Judge
           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**MOTION FOR SUMMARY JUDGMENT (Dkt. 39) AND**
**PLAINTIFF'S DISCOVERY MOTIONS (Dkt. 40, 44)**

## I.   PROCEDURAL HISTORY

Plaintiff, Rita Nilewonyan Faryen, filed this *pro se* employment

discrimination matter based on race and national origin on December 10, 2014

against her former employer, United Machining, Inc. (UMI).  (Dkt. 1).  On January

8, 2016, District Court Judge Gerald E. Rosen referred this matter to the

undersigned for all pretrial proceedings.  (Dkt. 38).  On February 1, 2016,

defendant filed a motion for summary judgment.  (Dkt. 39, 41).  Plaintiff was

ordered to file a response by April 15, 2016.  (Dkt. 43).  On March 4, 2016,

plaintiff filed a document titled "Motion to Amend/Correct Against Defendant

Discovery."  (Dkt. 44).  Plaintiff did not, however, file a timely response and was

ordered to show cause in writing by June 2, 2016 why the undersigned should not

recommend that the complaint be dismissed due to plaintiff's failure to file a response. (Dkt. 49).[1]  Alternatively, plaintiff was allowed to file a response to the motion for summary judgment by that same date.  Plaintiff was warned that **"[f]ailure to timely or adequately respond in writing to this Order to Show Cause or timely file a response to the motion for summary judgment will result in a recommendation that the motion be granted or that the entire matter be dismissed under Rule 41(b)**." (Dkt. 49) (emphasis in original).  After the Order to Show Cause was issued, plaintiff filed a document entitled "Plaintiff's Response to Defendant's Reply Brief." (Dkt. 50).  Thus, it appears that plaintiff filed a response to defendant's reply, found at Dkt. 48.  *See* n.1.  The Court will review plaintiff's filing at Dkt. 50 in order determine whether any genuine issue of material fact exists such that summary judgment should be precluded.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** (Dkt. 39) and that all other pending motions be **TERMINATED** as moot.  (Dkt. 40, 44).

---

[1]  In an abundance of caution, defendant filed a reply in support of its motion for summary judgment, addressed the factual issues raised in that pleading, along with those raised in an earlier version (plaintiff's "Motion Against Defendant Discovery," Dkt. 40).  (*See* Dkt. 48).

## II.    FACTUAL BACKGROUND

Plaintiff, who is black and whose native country is Liberia, worked at UMI in its plant located in Sterling Heights, Michigan from March 2012 to September 2013, when she was involuntarily terminated.  Plaintiff asserts that while employed at UMI she was subjected to unfair terms and conditions of employment, denied the opportunity for promotion, and paid less than non-black employees all based on her race and national origin.  (Dkt. 1, PgID 5).  She also alleges that she was fired because she complained about her treatment.  *Id.*

UMI contends that it employed plaintiff as an "at-will" employee.  UMI's Company Policies and Procedures booklet sets forth the "at-will" policy as follows:

> United Machining Inc. is an at will employer. This means that the employment relationship is for an indefinite period of time and can be terminated at any time, with or without cause and with or without notice.

(Dkt. 39, Ex. 1; *see also* Dkt. 39, Ex. 2, copy of Faryen's acknowledgment of receipt).  UMI also represents itself as an equal employment opportunity employer.  Its Company Policies and  Procedures state its policy as follows:

> United Machining Inc. is an equal opportunity employer that supports and subscribes to a policy of nondiscrimination in all aspects of employment.  United Machining will not discriminate on the basis of race, color, religion, national origin, sex, age, height, weight, marital status, familial status, handicap or any other

3

> reason prohibited by law.
>
> <div align="center">* * *</div>
>
> Equal Employment Opportunity has been, and will
> continue to be, a fundamental principle at United
> Machining Inc, where employment is based upon
> personal capabilities and qualifications without
> discrimination because of race, color, religion, sex, age,
> national origin, disability, or any other protected
> characteristic as established by law.
>
> This policy of Equal Employment Opportunity applies to
> all policies and procedures relating to recruitment and
> hiring, compensation, benefits, termination and all other
> terms and conditions of employment.

(Dkt. 39, Ex. 1).  UMI's "Harassment Free Workplace Policy" similarly prohibits

any form of harassment.  (Dkt. 39, Ex. 3).  The policy also encourages employees

to report alleged harassment and states UMI's commitment to investigating

harassment allegations:

> Reporting: Any employee who believes that he or she is
> being harassed is encouraged to immediately report any
> incident(s) to his or her Supervisor/Manager, the Human
> Resources Department, or the General Manager. The
> Company shall investigate all complaints of harassment
> promptly in an impartial manner and as confidentially as
> possible. If the complaints are determined by the
> Company to have merit, measures for correcting the
> situation will be immediately taken.  In no event will the
> Company retaliate against any employee for
> implementing in good faith the procedures of the policy.

(Dkt. 39, Ex. 3).

In March 2013, plaintiff submitted a complaint to human resources.  (Dkt.

<div align="center">4</div>

39, Ex. 4, 3/14/13 Faryen Correspondence).  This written communication addressed three issues: (1) not receiving overtime hours; (2) not being promoted; and (3) unfair pay differential.  UMI says that it reviewed each of these concerns and found each of them to be without merit.  UMI terminated plaintiff on September 3, 2013.  Two days later, plaintiff submitted a three-page document complaining about each and every allegedly inappropriate action since the time she was hired in 2012.  (Dkt. 39, Ex. 5, 9/5/13 Faryen letter).  Although plaintiff submitted a written complaint to human resources in March 2013, UMI says that complaint did not address most of the issues raised in plaintiff's post-termination document.  (Dkt. 39, Ex. 4, 3/4/13 Faryen letter).  UMI maintains that plaintiff failed to raise many of the issues raised in the post-termination document and consequently they should not be considered by the Court.  UMI argues further that the matters not previously-raised did not rise to the level of harassment or discrimination in any event.

Furthermore, UMI maintains that it had legitimate, non-discriminatory reasons for terminating plaintiff's employment.  Despite working at UMI for only eighteen months, plaintiff was counseled about her unacceptable job performance many times.  These issues included the following:

- 9/10/12 Verbal Warning – Misloaded Machine 1177 (Dkt. 39, Ex. 6).

- 6/12/13 Verbal Warning – Wrong Tag (Dkt. 39, Ex. 7).

- 7/30/13 Not correctly performing leak testing (Dkt. 39, Ex. 8).

- 8/19/13 Eating peanuts on the shop floor (Dkt. 39, Ex. 9).

- 8/28/13 Reporting that Ed Baker was harassing her (Dkt. 39, Ex. 10).

- 8/30/13 Left the premises without permission (Dkt. 39, Ex. 11).

According to UMI, all of these issues were documented and discussed with plaintiff. (Dkt. 39, Exs. 6 - 11).

With respect to the incident on August 30, 2013, plaintiff left her work station and UMI's facility while she was on the clock. UMI's work rules specifically prohibit "leaving the Company premises during working hours for personal reasons without a supervisor's permission." (Dkt. 39, Ex. 12, Work Rules). After conducting an investigation, UMI terminated her "at-will" employment for that misconduct: "...Rita left the premises during work time without notifying her supervisor. Therefore based on the work rule violations termination is the result." (Dkt. 39, Ex. 11). UMI says that it terminated plaintiff's employment only after it confirmed that she was away from her work station and off of company premises during work time. UMI cites the following documentary evidence in support of its finding:

- Statement of Eric Postrzech, Cell Leader, that he was in the work cell area at 7:37 p.m. and that Rita Faryen was not present at her station. (Dkt. 39, Ex. 13).

6

- Mr. Postrzech checked outside, saw that Faryen's vehicle was gone from the parking lot, and advised his supervisor. (Dkt. 39, Ex. 13, Postrzech Statement).

- Afternoon Shift Supervisor, Zannie Pryor, then checked the parking lot and confirmed that Faryen was not present. (Dkt. 39, Ex. 14, Photographs).

- Time clock swipes document that Faryen was on the clock at the time she was off company premises. (Dkt. 39, Ex. 15, Swipe Report).

After a review of the evidence, termination was recommended.

## III.   ANALYSIS AND CONCLUSION

### A.   Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non- moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the

8

non-moving party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

B.   <u>Sufficiency of Plaintiff's Response</u>

The present circumstances are similar to those facing the court in *Barnes v.*

*SRI Surgical Exp., Inc*. 2012 WL 1059935, *3 (E.D. Tenn. 2012), where "the poor quality of Plaintiff's briefing has considerably complicated the Court's task." The court observed that while the plaintiff did not fail to respond altogether, the response was "so deficient that an evaluation of the Court's responsibilities when presented with an unopposed dispositive motion" was appropriate. *Id*. A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded; at a minimum, the court is required to examine the motion to ensure that the movant has met his initial burden. *Id*. (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). But, in the absence of a response, the court will not "sua sponte comb the record from the partisan perspective of an advocate for the non-moving party." *Id*. (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992)). "Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Id*. If such evidence supports a conclusion that there is no genuine issue of material fact, the court will determine that the moving party has carried its burden, and "judgment shall be rendered forthwith." *Id*. (alteration omitted). *See also Norris v. Aryers*, 2016 WL 706238, *2 (E.D. Tenn. 2016); *Hicks v. Concorde Career Coll.*, 449 Fed. Appx. 484, 487 (6th Cir. 2011) (finding

that "[t]he district court properly declined to consider the merits of [plaintiff's] claim because [plaintiff] failed to address it in ... his response to the summary judgment motion"); *Snyder v. Chrysler Group, LLC*, 2016 WL 3213388 (E.D. Mich. 2016) ("If an opposing party fails to properly address the factual assertions of the moving party, the court may 'consider the facts undisputed for the purposes of the motion' and 'grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it.'") (quoting Fed.R.Civ.P. 56(e)).

Because plaintiff is a *pro se* litigant, her filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of *pro se* litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (*pro se* plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a *pro se* litigant does not alter the duty on a summary judgment motion to support the party's factual assertions with admissible evidence. *Maston v. Montgomery Cnty. Jail Med. Staff Pers*., 832 F.Supp.2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs.*, *Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a *pro se* party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 Fed.

Appx. at 485).  Given the nature of plaintiff's response to the motion for summary judgment, undersigned will endeavor to determine if defendant has met his initial burden as required in *Barnes*, *supra*.[2]

C.   Defendant Has Met Its Initial Summary Judgment Burden

1.   Claims not previously raised.

Defendant first argues that plaintiff seeks redress for claims that she never previously raised during her employment with UMI.  Specifically, plaintiff relies on a three-page document she submitted two days after she was terminated.  (Dkt. 39, Compare Ex. 4, 3/4/13 Faryen letter with Ex. 5, 9/5/13 Faryen letter).  UMI has a policy regarding reporting harassment.  (Dkt. 39, Ex. 3).  According to UMI, plaintiff received this policy and was aware of the procedures for making

---

[2] Plaintiff makes some vague reference to UMI generating "twisted documents" of its adverse treatment of her.  (Dkt. 50, Pg ID 1075).  To the extent plaintiff might be raising an authenticity argument regarding defendant's exhibits, her objection does not satisfy Rule 56.  As explained in *Ganesh v. United States of America*, 2016 WL 4036404, at *3 (6th Cir. July 28, 2016), Rule 56 now provides that parties asserting no genuine issue of material fact need only "cit[e] to particular parts of materials in the record" and then permits a party to "object that the material cited to support or dispute a fact *cannot be presented in a form that would be admissible in evidence*." *Id*. (quoting Fed.R.Civ.P. 56(c)(1)(A) and Fed.R.Civ.P. 56(c)(2) (emphasis supplied in *Ganesh*)).  Indeed, the amended rule specifically "omit[s] as unnecessary" "[t]he requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration." *Ganesh*, at *3 (quoting Fed.R.Civ.P. 56(c) advisory committee's note to 2010 amendment).  The Sixth Circuit rejected the plaintiffs' objections to "unverified" and "unsworn" documents because they had failed to object below that the documentary evidence could not "be presented in a form that would be admissible in evidence." *Id*. at *3 (quoting Fed.R.Civ.P. 56(c)(2)).  Similarly, here, plaintiff's objection to the evidence presented by UMI does not satisfy Fed.R.Civ.P. 56(c)(2).

complaints.  (Dkt. 39, Exs. 2 and 4, 3/14/13 letter).  Having failed to object to and report the alleged discrimination or harassment when the incidents allegedly occurred during her employment, UMI maintains that plaintiff cannot now attempt to do so in this litigation.

Plaintiff does not address any harassment claims or issues in her "response" at Dkt. 50.  Thus, there is no dispute that plaintiff did not provide notice to UMI of her harassment complaints.  To establish a claim of a hostile work environment, a plaintiff must show that her employer had actual or constructive notice of the hostile environment and failed to take prompt remedial action.  *Ely v. Uptown Grille, LLC*, 2014 WL 1308835, at *5 (E.D. Mich. 2014) (applying Michigan and Federal law).  UMI has met its initial burden of establishing that no notice was given.  Moreover, the fact that an employer has promulgated a sexual harassment policy for its employees may be used as an affirmative defense by an employer to disprove notice and rebut a hostile work environment claim.  *Ely*, at *5 (citing *Maddin v. GTE, Inc.*, 33 F. Supp. 2d 1027, 1032-33 (M.D. Fla. 1999)).  UMI has provided evidence that plaintiff signed an acknowledgment that she had received a copy of UMI's personnel policies.  (Dkt. 39, Ex. 2).  The only complaint plaintiff made was her March 2013 complaint, which did not mention any sexual harassment.  (Dkt. 39, Ex. 4).  Thus, UMI was never placed on sufficient notice that plaintiff was subject to any sexual harassment and plaintiff's claim fails.

2.   Discrimination claims

Before she was terminated, plaintiff complained that because of her race and national origin, she was not receiving overtime hours, she was not being promoted, and she was paid less than other similarly situated employees. UMI contends that none of these claims have merit.[3] To prove her racial discrimination claim under Title VII, plaintiff must prove that (1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) she was otherwise qualified for the position, and (4) she was replaced by someone outside the protected class or treated differently than a similarly situated, non-protected employee. *Deleon v. Kalamazoo Cnty. Road Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014). As discussed below, plaintiff's claim fails because she cannot show that she was treated differently than a similarly situated, non-protected employee.

Plaintiff alleges unlawful race and national origin discrimination in connection with her rate of pay. According to UMI, it lawfully bases a new employee's starting wage rate, in part, on the individual's experience as indicated by the individual's employment history. It uses, in part, the "Ranking Level Chart for Manufacturing Personnel," (Dkt. 39, Ex. 18), to determine a new employee's

---

[3] Defendant also argues, without evidentiary support by way of affidavit or otherwise, that UMI could not have discriminated based on plaintiff's national origin because it was unaware of the same. Because the undersigned recommends the granting of defendant's motion on other grounds, it is unnecessary for the Court further consider defendant's argument in this regard.

starting rate of pay.  UMI says that it set plaintiff's wage rate commensurate with her experience, skills, and abilities.  Plaintiff had only three months of experience as a CNC Machine Operator in which she earned $9.50 per hour.  (Dkt. 39, Ex. 19).  Before that experience, which was as a temporary worker, she had not worked in any manufacturing job since January 2000.  (Dkt. 39, Ex. 19).  According to UMI, she also stated in her interview that she had no other machining experience and no hi-lo experience.  (Dkt. 39, Ex. 20).  UMI accordingly offered her a starting wage rate of $10.00 per hour, which was consistent with its "Ranking Level Chart for Manufacturing Personnel."  (Dkt. 39, Ex. 18).

UMI points out that in 2012, it hired numerous other employees, regardless of race or national origin, at or below $10.00 per hour based on their experience.  (Dkt. 39, Ex. 21).  It also, in 2012, hired other black employees above $10.00 per hour for Machine Operator and CNC Machine Operator positions based on their experience.  (Dkt. 39, Exs. 21 and 22).  UMI maintains that these facts, without more, establish that UMI did not subject plaintiff to unlawful discrimination based on her race or national origin with respect to her rate of pay.  UMI also points out that during the course of plaintiff's employment, she received a 15% increase in her first year of employment.  Specifically, plaintiff received a one dollar per hour increase after her first ninety days and then an additional fifty cents per hour

increase after her first year of employment.  (Dkt. 39, Ex. 23).

At the EEOC level, plaintiff made claims that she was not treated the same as Eric Postrzech, Kelly Ray, Vincenzo Maniaci, and Senad Ciplakovi.  According to UMI, plaintiff was not "similarly situated" to any of those individuals.  UMI, for instance, hired Mr. Postrzech at a starting wage rate of $13.00 per hour ($12.50, plus $0.50 shift premium) because he had over 14 years of machining experience at American Axle. (Dkt. 39, Ex. 24, Postrzech's Qualifications). UMI says that this starting rate was consistent with UMI's "Ranking Level Chart for Manufacturing Personnel" for an experienced machine operator and that Postrzech's fourteen years of experience were not comparable to plaintiff's three months. (Dkt. 39, Ex. 18).

UMI hired Mr. Ray at a starting wage rate of $11.00 per hour ($10.00, plus $1.00 shift premium) because he had years of manufacturing experience and had completed multiple courses related to machining work.  (Dkt. 39, Ex. 25, Ray's Qualifications).  His starting rate also was consistent with the "Ranking Level Chart for Manufacturing Personnel" for an experienced machine operator. (Dkt. 39, Ex. 18).  Again, UMI points out that plaintiff's three months of CNC machining experience as a temporary worker were not comparable to Mr. Ray's years of experience.

UMI hired Mr. Maniaci at $10.00 per hour, even though he had two years of

machining experience, including CNC machines, from 2004 to 2006. (Dkt. 39, Ex. 26, Maniaci's Qualifications). That starting rate of pay was both consistent with the "Ranking Level Chart for Manufacturing Personnel" (Dkt. 39, Ex. 18) and with plaintiff's starting rate of pay of $10.00 per hour, even though Mr. Maniaci had substantially more machining experience than plaintiff.

UMI similarly hired Mr. Ciplakovi at $10.00 per hour, despite his years of experience as a machine operator. (Dkt. 39, Ex. 27, Ciplakovi's Qualifications.) That starting rate of pay was both consistent with the "Ranking Level Chart for Manufacturing Personnel" (Dkt. 39, Ex. 18) and with plaintiff's starting rate of pay of $10.00 per hour, even though Mr. Ciplakovi had substantially more machining experience than plaintiff. His starting wage rate accordingly fails to establish that UMI subjected plaintiff to unlawful discrimination with respect to her starting rate of pay.

In her response, plaintiff says that Mr. Vincenzo was given a larger raise than her and was doing the same job and they were hired the same day. (Dkt. 50, Pg ID 1074). She also says that Mr. Postrzech, Mr. Ray, and Mr. Ciplakovi were hired later at a higher rate and received a larger raise. _Id_. at Pg ID 1075.[4] Plaintiff

---

[4] Plaintiff also seems to suggest that she has additional pertinent work experience that UMI did not consider, which would be relevant to her wage claim and her failure to promote claim. (Dkt. 50, Pg ID 1076, ¶¶ 10-13). However, it is not clear from plaintiff's materials that UMI was aware of this experience at the time she was hired. Plaintiff mentions in an undated letter that she has more experience than is currently identified on her resume because she only listed jobs held in the last 10 years. (Dkt. 50, Pg ID 1080). Plaintiff does not explain how, under

fails to offer any proof of her allegations, as is her obligation in responding to summary judgment and also does not address the evidence supplied by UMI describing how the rates of pay for the comparable employees identified followed the "Ranking Level Chart for Manufacturing Personnel" without regard to race or national origin.  Plaintiff has not met her burden of establishing a genuine issue of material fact regarding her claim that she was paid less because her race and national origin.  Thus, her claim must fail.  The undersigned also concludes that UMI has met its initial burden and summary judgment for UMI is appropriate on this claim.

UMI next argues that plaintiff's allegation that UMI had her "taken off" the schedule and thus denied her overtime work "due to" her "national origin/race" is also without merit.   According to UMI, plaintiff's overtime hours were proportionate to the overtime hours worked by all "direct labor" employees at the plant where she worked.  Specifically, the payroll records for hourly labor during plaintiff's dates of employment demonstrate the equal treatment of employees with respect to overtime:

| Time Period | Overall Hourly Labor | Faryen |
|---|---|---|
| 3/1/12 – 12/31/12 | 10% | 10% |

---

UMI's hiring guidelines, this evidence would have changed her starting rate of pay or would have impacted their decision on the promotion, given her poor test results. *See*, *infra*.

1/1/13 – 9/3/13                13%                              10%

(Dkt. 39, Exs. 28 and 29, 2012 and 2013 Payroll Journal and Faryen's 2012 and
2013 Compensation Reports (overtime averages on pages 6 and 7, United
Mach00028 and 35)).  Plaintiff does not address the issue of overtime or UMI's
evidence in her response.  Plaintiff has not met her burden of establishing a
genuine issue of material fact regarding her claim that she was given less overtime
because her race and national origin.  Thus, her claim must fail.  The undersigned
also concludes that UMI has met its initial burden and summary judgment for UMI
is appropriate on this claim.

Plaintiff also claims that the fact that she was not promoted to the Quality
Department was somehow a form of race or national origin discrimination.  UMI
maintains that this allegation also has no merit.  In August 2012, plaintiff
submitted a letter of interest to the Quality Department Manager, Tim McClure
(White male).  (Dkt. 39, Ex. 31).  According to UMI, a key factor used in
determining whether an employee is eligible for a promotion is their test results.
Plaintiff's tests  results, however, were less than satisfactory.  (Dkt. 39, Ex. 32).
Specifically, she scored only 52.5%.   (Dkt. 39, Ex. 32).  According to UMI, the
Quality Inspector position requires strong math skills.  (Dkt. 39, Ex. 33).  UMI
maintains that plaintiff's test results demonstrate that she did not possess these
necessary skills and, therefore, was not qualified for this position.  Plaintiff does

not address the issue of the failure to promote or UMI's evidence in her response

except to say that she was denied the promotion by not be contacted and that

someone with a high school diploma was promoted over her. (Dkt. 50, Pg ID

1075). Plaintiff has not met her burden of establishing a genuine issue of material

fact regarding her claim that she was not promoted because her race and national

origin. Thus, her claim must fail. The undersigned also concludes that UMI has

met its initial burden and summary judgment for UMI is appropriate on this claim.

### 3. Wrongful termination claim

Again, to prove her racial discrimination claim under Title VII, plaintiff

must prove that (1) she was a member of a protected class, (2) she suffered an

adverse employment action, (3) she was otherwise qualified for the position, and

(4) she was replaced by someone outside the protected class or treated differently

than a similarly situated, non-protected employee. *Deleon v. Kalamazoo Cnty.*

*Road Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014). In order to prevail in a Title

VII employment discrimination claim, a plaintiff must provide either direct

evidence of intentional discrimination by the defendant or circumstantial evidence

that would allow an inference of discriminatory treatment. *Talley v. Bravo Pitino*

*Rest.*, 61 F.3d 1241, 1246 (6th Cir. 1995). If a plaintiff successfully establishes

these four elements, the burden shifts to the defendant to articulate a legitimate,

nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  If the defendant successfully supplies such a legitimate reason, the burden then falls on the plaintiff to demonstrate that this proffered reason is mere pretext.  *Id*. at 804.  In this case, as discussed in detail below, UMI has provided evidence of a legitimate reason for plaintiff's termination and plaintiff has not come forward with any evidence to establish that UMI's reason was a mere pretext.

UMI maintains that plaintiff's allegations that UMI unlawfully discharged her for being away from her work station during work time on August 30, 2013 and that "non-Black employees" committed similar or more severe offenses without being discharged have no merit.  On August 30, 2013, UMI says that plaintiff left her work station and UMI's facility while she was on the clock.  UMI says it then lawfully terminated plaintiff's "at-will" employment for that misconduct.  UMI points out that the employment discrimination laws do not "require the employer to have good cause for its decisions.  The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, as long as its action is not for a discriminatory reason."  *Holston v. Sports Authority*, 136 F.Supp.2d 1319, 1330 (N.D. Ga. 2000).  UMI maintains that it lawfully exercised its legal right to terminate plaintiff's "at-will" employment because of her misconduct and that her race and national origin were not factors, in whole or in part, in the decision to discharge her.  They were irrelevant to that

21

decision, which was based only on her misconduct.  That termination, accordingly, did not violate the employment discrimination laws.

Furthermore, the supervisors who were involved in her discharge were Zannie Pryor, a black male, and Curtis Kennedy, a black male.  (Dkt. 39, Exs. 11 and 34).  UMI points out that when a supervisor or manager who recommends an adverse employment action and the affected employees are "members of the same protected class," that fact "weighs ... against an inference of discrimination." *Kelly v. Mills*, 677 F. Supp. 2d 206 (D. D.C. 2010) (citations deleted).  According to UMI, the fact that Mr. Pryor and Mr. Kennedy were among the decision-makers regarding plaintiff's discharge thus weighs against any inference of race discrimination against plaintiff.

UMI also maintains that plaintiff was treated consistently with other similarly situated employees.  Specifically, two former employees were disciplined for the same and/or like violation as Faryen.  For example, Kenneth King (white male), Midnight Shift Cell Leader, was terminated on March 12, 2012 for leaving company premises during work time by his immediate supervisor, David Brooks (black male).  (Dkt. 39, Ex. 35).[5]  UMI argues that plaintiff violated a company

---

[5]  UMI also asserts that Rachel Komski (white female), Dayshift Machine Operator, was terminated on November 18, 2011 for leaving her work stating during work time by her immediate supervisor, Frank Nadolski (white male).  However, UMI does not provide any supporting documentation of this termination and it will therefore not be considered.

work rule, and UMI discharged her for that offense, just like it terminated other employees for the same offense.

In response, plaintiff says that she did not violate the work rules. She went outside the building on her break like all employees do, to smoke, cool off, or move their cars closer to the building entrances, all within the premises of the company. (Dkt. 50, Pg ID 1075). Plaintiff says that, on her 20 minute break, she went out to the parking lot to move her car closer to the building and that the picture taken of her was taken at 7:45 p.m. and her break started at 7:40 p.m. She also says that Mr. Pryor and Mr. Kennedy were not involved in her termination and she was terminated by the human resource manager, Maria, at the direction of the company owner, Lou. Rather, plaintiff says that the two black men identified by UMI were merely witnesses to her termination. *Id*.

While plaintiff maintains that defendant's reason for firing her was factually without merit, she offers no evidence whatsoever to support her claim that she was terminated because of her race or national origian or that the reason for her termination was merely a pretext. Plaintiff has not met her burden of establishing a genuine issue of material fact regarding her claim that she was terminated because her race or national origin or that the stated reason for her termination was merely a pretext. Thus, her claim must fail. The undersigned also concludes that UMI has met its initial burden and summary judgment for UMI is appropriate on

this claim.

      4.     Retaliation claim

A prima facie case of Title VII retaliation requires plaintiff to show (1) she engaged in protected activity under Title VII; (2) the employer knew she engaged in the protected activity; (3) the employer subsequently took an adverse, retaliatory action against her; and (4) the protected activity and the adverse action were casually connected. *Williams v. The Nashville Network*, 132 F.3d 1123, 1131 (6th Cir. 1998).  According to UMI, Faryen cannot demonstrate a  prima facie case.  Specifically, it contends that there was no connection  between her "complaining," which UMI investigated, and her later discharge for an unrelated reason, which consisted of leaving the facility while still on the clock. Contrary to her belief, Faryen's "complaining" did not insulate her from the disciplinary consequences of her later misconduct.  An employee must present evidence of causation of "retaliation" in inverse proportion to the temporal proximity between the protected activity and the adverse action.  *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).  "Temporal proximity between an employer's knowledge of an employee's protected activity and an adverse action against that employee must be 'very close' to show retaliatory motive." *Clarke v. Dyn Corp. Int'l., LLC*, 962 F.2d 781  (D. Md. 2013) (citation deleted). Timing also does not suffice when "other evidence overwhelmingly suggests

24

another legitimate reason for the adverse employment action." *Nelson v. J.C. Penney Co.*, 75 F.3d 343 (8th Cir. 1996).

According to UMI, the length of time between plaintiff's complaint in March 2013 and her discharge in September 2013 was not close enough to permit an inference of a causal connection between those events. *See Williams v. Phila. Housing Auth. Police Dept.*, 380 F.3d 751, 760 (3d Cir. 2004) (two months between request for accommodation and termination was not close enough to establish a causal link). Also, UMI contends that her misconduct constituted an intervening event that severed any causal connection between her March 2013 complaint and her September 2013 discharge. According to UMI, plaintiff's retaliation claim is solely based on temporal proximity and it maintains that this is not enough to demonstrate a causal connection, given the length of time between the complaint and her discharge and her intervening misconduct.

Plaintiff's response does not really address her retaliation claim except to say that she believes the company supervisor refused to investigate her complaints, coerced other employees to create false accusations and charges against her, conspired to get rid of her, generated "twisted documents of their adverse treatment" toward her, and accused her of being the perpetrator. (Dkt. 50, Pg ID 1075). Plaintiff has not met her burden of establishing a genuine issue of material fact regarding her retaliation claim. Thus, her claim must fail. The undersigned

25

also concludes that UMI has met its initial burden and summary judgment for UMI is appropriate on this claim.

### 5. Front pay damages

This issue need not be addressed, given the foregoing conclusions that plaintiff's claims are without merit and that summary judgment should be granted in UMI's favor.

### D. Plaintiff's Motions (Dkt. 40, 44)

In plaintiff's "Motion against the defendant Discovery Document" (Dkt. 40), she claims that several documents produced by UMI have been forged.  In her "Motion to Amend Against Defendant Discovery" (Dkt. 44), plaintiff also makes claims that many documents provided by UMI were forged.  Plaintiff offers no evidence in support of her claims and the undersigned suggests that these motions be **TERMINATED** as moot in light of the above recommendations to grant UMI's motion for summary judgment.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** (Dkt. 39) and that all other pending motions be **TERMINATED** as moot (Dkt. 40, 44).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

26

as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 16, 2016                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on <u>August 16, 2016</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: <u>Rita Nilewonyan Faryen, 20923 Beechwood, Eastpointe, MI 48021.</u>

<div style="margin-left:40%">

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>